UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HERMAN McMILLIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-1210 (GK) |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# MEMORANDUM OPINION

Plaintiff filed this action *pro se*, pursuant to the Freedom of Information Act, 5 U.S.C. 552 ("FOIA"), seeking transcripts of telephone calls between himself and his attorney, made from telephones at the institution in which Plaintiff was then housed, and which had been recorded by Defendant.[1] Defendant has moved to dismiss the complaint insofar as it relates to calls other than one call made on February 8, 2003, contending that Plaintiff has failed to exhaust his administrative remedies with respect to these calls. Defendant also moves for summary judgment as to the February 8 call.[2] In opposing the motion, Plaintiff addresses only the February 8 telephone call. On review of the record and the applicable legal principles, Defendant's motion to dismiss will be denied and its motion for summary judgment will be granted.

---

[1] Plaintiff's motion for an expedited hearing to preserve the requested transcripts was denied as moot, Defendant having provided evidence that it had taken steps to preserve all calls that had not been automatically purged by the time Plaintiff requested the transcripts.

[2] Defendant's motion to substitute the Department of Justice as Defendant will be granted without opposition. That agency is the only proper Defendant in a FOIA case. *See* U.S.C. § 552(a)(4)(B).

I. Background

The basic facts are not contested. In a letter to the FOIA office of the Bureau of Prisons on February 18, 2003, Plaintiff requested "the telephone records of me and my attorney on 2/8/03. The number is (202)966-4555 and my attorney name is John M. Copacino." Plaintiff stated that he wanted the record of the call to include as part of the record in a case he had pending in court. Plaintiff also wrote,

> I would also like to make another F.O.I.A. request and it's as follows: I would like to know how long do you maintain record of telephone conversations. And can i [sic] get old conversation[s] from the same attorney? If for any reason any of the above requested information or material is deemed to be privilrged [sic] and exempt under F.O.I.A. please specify the statutory [sic] for exemption . . . .

*Declaration of Michael D. Bredenberg*, submitted in support of Defendant's motion, *Attachment* A.[3] In a letter to Plaintiff dated March 4, 2003, Defendant responded that records of telephone conversations "are ordinarily maintained for 180 days." *Id.*, *Attachment* B. Defendant had located "one phone call request" in response to Plaintiff's letter, which was being withheld pursuant to FOIA exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 552(b)(6), (7)(C). *Id.* Plaintiff was advised that if he could obtain written consent of the other party to the call, stating that he did not object to release of "his recorded statements," Defendant would "reconsider our release determination." *Id.* Moreover, Plaintiff was told that if he could not obtain the other person's consent, "you may request your portion of the call." *Id.*

On March 6, 2003, apparently before he received the March 4 letter, Plaintiff wrote again to Defendant's FOIA office, to remind them

---

[3] Bredenberg is a staff attorney at the Butner Legal Center of the Bureau of Prisons, with duties related to Freedom of Information Act requests. *Bredenberg Decl.* ¶¶ 1-3.

> of the information I am requesting, to wit: A copy on a monitored phone conversation I made to John M. Copacino on a Bureau of Prisons inmate phone on 2/8/03, and *any and all prior calls made by me to telephone # (202)-662-9575 from 9/11/01 to the present date.*

*Bredenberg Decl., Attachment C* (emphasis added). A letter to Plaintiff dated March 20, 2003, in response to this March 6, 2003, letter, reiterated the substance of the March 4 response to Plaintiff's initial FOIA request. *Id., Attachment D.*

On March 11, after Plaintiff had received the March 6 letter denying his request, he prepared an appeal from the denial of his request for "copies of the phone calls [he] had on 2/18/03 [sic] between myself and my attorney John M. Copacino." This appeal reiterated that Plaintiff had "also requested all transcripts of all calls made by me to (202)-662-9575." *Id., Attachment E.* On April 4, Plaintiff was advised of the appeal number, *Id., Attachment F*, but on May 7, 2003, when Plaintiff had received no response to his appeal, he submitted the complaint in this case.

The telephone lines available to inmates at FCC Petersburg, where Plaintiff was housed include both monitored and unmonitored lines. *Bredenberg Decl.,* ¶¶ 1-3, 5. Calls on special lines, which are neither monitored nor recorded, are available for prisoners to call their attorneys. *Id.* ¶ 5. Because these lines are available, Bredenberg states that "an attorney's reasonable expectation would be that the call would not be monitored or recorded." *Id.* ¶ 7. In almost all other circumstances, inmates must place calls on monitored lines. These conversations are automatically recorded "for purposes of enhancing institution security and detecting illegal activity." *Id.* ¶ 5. Both inmates and defense counsel are aware that two different lines exist, and inmates know that "unless they request access to an unmonitored phone for an attorney call, the call will be monitored." *Id.*

3

¶ 6.[4]  When an inmate calls on a monitored line from FCC Petersburg, the recipient is notified that the call is from a federal prison.  The recipient is not notified, however, that the call will be monitored and recorded.  *Id.* ¶ 7.  Recorded calls are retained for 180 days, and then are erased by the recording system.  Unless the Bureau needs a transcript of such a call for an investigation, a transcript will not be produced.  *Id.* ¶ 8.  There is no transcript of Plaintiff's call on February 8, 2003.  *Id.*

On July 28, 2003, Plaintiff requested a court order to preserve the telephone calls whose release he seeks in this case.  In response, Defendant submitted a declaration from Ken Kepley, special investigative agent at FCC Petersburg.  Kepley described the system used at that institution for recording telephone calls by inmates, and confirmed that the system "routinely and automatically purges all calls on the system after 180 days." *Kepley Decl.* ¶ 2.

In early March 2003, Kepley had been asked by the Butner Legal Center to preserve the recording of the February 8, 2003, conversation between Plaintiff and his attorney, and he did so, copying the call onto a compact disk.  *Id.* ¶ 3.  During April 2003, Kepley had received a second request to preserve telephone calls from Plaintiff, this time "to preserve any of inmate McMillian's phone calls placed to (202) 662-9575, beginning on March 12, 2003, and extending as far back as the calls were retrievable." *Id.* ¶ 4.  Kepley thereupon preserved and transferred to a compact disc all calls that were then retrievable, except for a call on November 7, 2002, which had already been purged.  *Id.*

In July 2003, Kepley received a third request to preserve calls.  Calls on November 7, 8, 20,

---

[4] A copy of the Bureau of Prisons Policy Statement regarding telephone lines is Attachment G to the Bredenberg Declaration.

and 22 of 2002, and February 4, 2003, to (202) 662-9575 had previously been preserved (except the November 7 call), as had the February 8, 2003, call to (202) 966-4555. *Id.* ¶ 5. Calls on November 19 and 25, 2002, to (202) 585-7390 were unretrievable because they had already been purged. Kepley then acted to preserve calls on March 7, April 3, 4, 8, 23, 30, and May 6 and 7, 2003 to (202) 783-5065. *Id.*

On August 1, 2003, after Defendant had been directed to respond to Plaintiff's motion to preserve records by August 4, 2003, Butner Legal Center asked Kepley to confirm that the telephone calls, *including calls in November 2002*, had been preserved. *Id.* ¶ 6. At this time, Butner asked that Kepley also preserve Plaintiff's calls to (202) 662-9577, and "that [he] preserve all calls to the above numbers for as far back as the Laser Voice System permits." *Id.* Kepley confirmed that the calls to (202) 662-9575 between November 8, 2002, and February 4, 2003, had been preserved, and that one call on February 8, 2003, to (202) 966-4555 had been preserved. *Id.* ¶ 7. In addition, he preserved all then-existing calls made by Plaintiff to four separate numbers, including the two numbers involved in this action, although except as specifically noted the preserved calls only go back as far as February 2, 2003 (180 days before August 1, 2003). *Id.*, ¶¶ 7, 8.

II. General Principles

Defendant has moved to dismiss the portion of the complaint relating to telephone calls other than those on February 8, 2003, and for summary judgment as to that telephone call. It contends that FOIA exemptions justify its decision to deny the request for the February 8 call, and that Plaintiff never submitted a FOIA request for the additional telephone calls described in his complaint.

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss for failure to state a claim, the factual allegations of the complaint must be presumed true and construed liberally in favor of the plaintiff. *Shear v. National Rifle Ass'n,* 606 F.2d 1251, 1253 (D.C. Cir. 1979). A plaintiff is granted the benefit of all inferences that can be derived from the facts alleged on a motion to dismiss. *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir 1994).

Summary judgment should be entered for a moving party when there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party and draw all "justifiable inferences" in his favor. *Id*. at 255*; see also Washington Post Co. v. United States Dep't of Health and Human Servs*., 865 F.2d 320, 325 (D.C. Cir. 1989). In responding to a motion for summary judgment, Rule 56(e) requires the opponent to "'set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 (quoting *First Nat'l Bank  v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987); *accord*, *Williams v. United States*, 932 F. Supp. 354, 355 (D.D.C. 1996), citing Local Rule 108(h), now LCvR 7.1(h).

The Freedom of Information Act gives this Court jurisdiction over an action "to enjoin [an] agency from withholding agency records and to order the production of agency records improperly

withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  In a FOIA case, the Court may grant summary judgment solely on the basis of information provided in a declaration, when the declaration describes "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.1981); *accord, Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). In reviewing the agency's submissions, the Court should construe the facts and inferences in the light most favorable to the plaintiff. *Williams v. United States, supra*.  The agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements."  *Goland v. Central Intelligence Agency,* 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980).

III.  The Motion to Dismiss

Neither the March 4 nor the March 20 letter from the  Defendant in response to Plaintiff's FOIA request refers to Plaintiff's request for release of calls in addition to the February 8 call.  A fair reading of the two letters from Plaintiff indicates that Plaintiff did, in fact, seek release of the telephone calls made on other dates to Attorney Copacino.  The February 18 letter specifically stated that Plaintiff wanted "to make *another* F.O.I.A. request," that is, "how long do you maintain record of telephone conversations [a]nd can [I]  get old conversation[s] from the same attorney." *Bredenberg Decl., Attachment A* (emphasis added).  Plaintiff's next letter, on March 6, "remind[ed] [Defendant] of the information I am requesting, to wit" a copy of the February 8 conversation "and *any and all prior calls made by me* to telephone # (202)-662-9575 from 9/11/01 to the present date."

*Id., Attachment C* (emphasis added). For some unexplained reason, Defendant responded only to the request for the February 8 call and ignored the portion of Plaintiff's letters in which he specifically stated he requested other calls under the FOIA. Plaintiff's appeal from the denial of his requests specifically referred to his request for both the February call (mistakenly cited as February 18), and "all transcripts of all calls made by me to (202)-662-9575." *Id., Attachment E.* Defendant simply is wrong when it argues that Plaintiff did not exhaust his administrative remedies with respect to these other telephone calls.

Moreover Defendant's own actions suggest that it recognized the likelihood that Plaintiff had made a FOIA request for other telephone calls. Even before the complaint in this case was filed, the Butner Legal Center made several requests to FCI Petersburg for preservation of Plaintiff's telephone calls in addition to the February 8 call. *See Declaration of Ken Kepley*, summarized *supra* at 4-5. Clearly, the Butner Legal Center interpreted Plaintiff's letters as constituting a FOIA request for more than the February 8, 2003 telephone call. Finally, although Defendant now contends that only the February 8 call is involved in this action, its formal Response to the July 31, 2003, Court Order and Plaintiff's motion to preserve records specifically described the "recordings of the telephone calls sought in the complaint" as "the 4555 call and the 9575 calls". *Defendant's Response* at 3 [Dkt. # 15]. The motion to dismiss insofar as the complaint seeks release of calls other than the February 8 call will, therefore, be denied.

IV. The Motion for Summary Judgment

Defendant relies on FOIA Exemptions 6 and (7)(C) to justify withholding the February 8 telephone call. Both exemptions seek to protect the privacy interests of persons mentioned in government files, and require a balancing of the privacy interests of the third parties against the

public interest in release of the material.  *See, e.g., United States Dep't of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 773-775 (1989) (Exemption 7(C)); *SafeCard Services Inc. v. Securities and Exchange Comm'n,* 926 F.2d 1197, 1205-06 (D.C. Cir. 1991) (same); *National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) (Exemption 6); *Ripskis v. HUD*, 746 F.2d 1, 3, (D.C. Cir. 1984) (same); *International Bhd of Elec. Workers Local No. 5 v. HUD*, 852 F.2d 87, 89 (3d Cir. 1988) (same).  The Court concludes that in this case the privacy interests of persons other than Plaintiff outweigh the public interest in release of the taped telephone conversation.

Exemption 6 permits the government to withhold information about individuals that is contained in "personnel and medical files and similar files" when disclosure "*would constitute a clearly unwarranted invasion* of personal privacy," 5 U.S.C. § 552(b)(6) (emphasis added).  This suggests that a strict standard must be met to justify withholding information based on Exemption 6.  *See Reporters Committee*, 489 U.S. at 756; *Beck v. Department of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).   The tapes of telephone conversations such as those Plaintiff seeks in this case are considered "similar files" subject to withholding under Exemption 6.  *See New York Times Co. v. National Aeronautics & Space Admin.*, 920 F.2d 1002, 1007 (D.C. Cir. 1990) (en banc), *after remand*, 782 F. Supp. 628 (D.D.C. 1991) (voices of Challenger astronauts); *Diaz v. Federal Bureau of Prisons*, 2003 WL164290 (1st Cir. Jan. 24, 2003) (same).[5]

Exemption 7(C) provides a somewhat lower floor for withholding records than does Exemption 6.  *See Reporters Committee,* 489 U.S. at 756; *Beck*, 997 F.2d at 1490, 1491.  This

---

[5]  With its motion, Defendant provided the text of the decisions of the Court of Appeals and the United States District Court, and the Magistrate Judge's Report and Recommendation which were affirmed in *Diaz*.

exemption permits an agency to withhold a record compiled for law enforcement purposes "only to the extent that the production of [the record] could reasonably be expected to constitute an *unwarranted invasion* of personal privacy." 5 U.S.C. § 552(b)(7)(C) (emphasis added). In order to overcome the privacy interest of an individual discussed in law enforcement files, there must be "'compelling evidence that the agency denying the FOIA request is engaged in illegal activity,'" and that the information sought "'is necessary in order to confirm or refute that evidence.'" *Davis v. United States Dep't of Justice,* 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *SafeCard Services*, 926 F.2d at 1205-06); *accord, Lopez v. Department of Justice*, 2004 WL 626726 (D.C. Cir. March 29, 2004). Plaintiff does not contest the status of the BOP as a law enforcement agency, or that the calls are monitored to support that function.[6]

In considering whether privacy interests of third parties would be invaded by release of the February 8 call, Defendant first surmised that Plaintiff's attorney "had a reasonable expectation that the conversation was not being recorded, and that no such recording would be released." *Bredenberg Decl.* ¶ 26. Bredenberg asserts that "[b]ecause calls to attorneys are ordinarily made on unmonitored lines, it is unlikely that an attorney would expect a call to be monitored and recorded." *Id.* Bredenberg "reviewed" the February 8 call and states that there was no notification, by Plaintiff or otherwise, that the call was being recorded or monitored. *Id.* ¶ 29.

Bredenberg describes Plaintiff's portion of the call as an attempt "to induce his defense

---

[6] Defendant describes the purpose of the monitoring of telephone calls as "to guard against illegal activities or suspected illegal activities being conducted, coordinated or directed from within a Federal correctional institution." *Bredenberg Decl.* ¶ 24. Bredenberg states that telephone monitoring has enabled the Bureau of Prisons "to thwart an escape attempt and the introduction of drugs into a Federal prison." *Id. See also* 28 C.F.R. § 540.102 (BOP regulation describing the purpose of the monitoring as "to preserve the security and orderly management of the institution and to protect the public.")

attorney into either making a statement, or failing to disagree with a statement by plaintiff, that plaintiff apparently believes will support" pending litigation by Plaintiff against the attorney or an action relating to revocation of his parole. *Id.* ¶ 30. Bredenberg asserts that "[t]hese statements appear to potentially cast a negative light on the attorney himself" and his reputation and might do so if released to the public. *Id.* Thus he concluded that release of the call "would constitute a clearly unwarranted invasion of the attorney's personal privacy." *Id.* ¶ 30. In addition, Bredenberg states, other third parties are mentioned in the telephone call, in a discussion that "casts them in a negative light by implicating them in illicit behavior." *Id.* ¶ 31. Moreover, Bredenberg states that the call does not mention or contain any information about the Bureau of Prisons or its employees. *Id.* ¶ 32. For these reasons Defendant concluded that Plaintiff's private interest does not constitute a sufficient public interest to warrant disclosure of the February 8 telephone call.

In opposing the motion, Plaintiff observes that the published regulation gave notice that calls on monitored phones would be recorded. He argues that the attorney must have known that the call would be recorded, since he had called the attorney collect more than 100 times on the monitored telephone. *Plaintiff's Response to Defendant's Motion for Summary Judgment* at 1 & Exhibit. Plaintiff states that he called the attorney on February 8 to inquire about the status of an affidavit he had been promised relating to the date of his parole revocation hearing in June 2000, and that their conversation concerned the affidavit and its contents, and the assertions of the Parole Commission and the prosecutor relating to (apparently) the date of the revocation hearing.[7] *Id.* at 2. Plaintiff

---

[7] This case is one of four cases related to Plaintiff's contention that the District of Columbia Board of Parole revoked his parole on June 2, 2000, although the parole revocation hearing was not held until June 21, 2000. In addition to the instant case, the following cases relate to this claim: *McMillian v. United States Parole Comm'n*, Civil Action 03-1500; *McMillian v. United States Parole Comm'n*, Civil Action 03-1898; and *McMillian v. CSOSA*, Civil Action 03-2449.

claims that the public interest in revealing fraud and abuse of power by the Parole Commission and an Assistant United States Attorney outweighs any privacy interest of the other party to his telephone call. *Id.* at 3-4. He also contends that his attorney consented to the recording of the telephone call. *Id.* at 4.

The parties therefore disagree as to whether Plaintiff's attorney expected the telephone conversation with Plaintiff to be private or whether he knew it would be monitored and recorded. Both parties rely on their speculation as to the attorney's expectation, although Bredenberg does say that the tape of the February 8 call contains nothing to indicate that the call was being recorded. *Bredenberg Decl.* ¶ 29. The parties also disagree as to the contents of the telephone call, Defendant arguing that "the recording [of the February 8 call] contains statements by plaintiff that appear intended to cast plaintiff's attorney in a negative light," *Memorandum* at 21, and Plaintiff contending that the attorney made statements that would reveal improper conduct by government agencies. However, the outcome of this case does not depend on the substance of the telephone conversation or whether the attorney knew that the call was placed on a monitored telephone.[8]

Release of a recording of a telephone conversation can be an invasion of personal privacy. *See New York Times Co. v. National Aeronautics & Space Admin.*, *supra*; *Stover v. United States Dep't of Justice,* Civil Action No. 03-1410 (RCL)(January 12, 2004), *appeal pending* (transcripts of prison telephone calls); *Monaco v. Department of Justice*, Civil Action No. 02-1843 (D.D.C. 2003)(same);[9] *Diaz v. Federal Bureau of Prisons*, *supra* (same). The question then becomes

---

[8] Although Plaintiff was advised that Defendant would reconsider its decision to decline production if he submitted a release from the attorney, no such release was proffered.

[9] Defendant provided a copy of the opinion in *Monaco,* which has not been published, in a supplemental filing (Dkt. # 23).

whether the Defendant properly concluded that the privacy interests of the attorney and other third parties outweighed the public interest in disclosure. *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993)(Exemptions 6 and 7(C)). Plaintiff contends that there is a public interest in knowing about what he terms fraud in submissions by the United States Parole Commission to a United States District Court. At the time this case was filed, Plaintiff had a petition for habeas corpus pending in the United States District Court for the Middle District of Pennsylvania, *McMillan [sic] v. Mendez*, Civil Action No. 3:CV-02-1061, in which he challenged the action of the District of Columbia Board of Parole in revoking his parole in June 2000, and a subsequent reparole decision by the United States Parole Commission. One of his contentions was that the Board of Parole had revoked his parole on June 6, 2000, although it did not conduct a hearing on the question whether the parole should be revoked until June 21, 2000. The Parole Commission submitted documents in that case indicating that the hearing had in fact been held on June 2, 2000.[10]

Plaintiff of course would be the primary beneficiary of the release if the conversations with his attorney support his position, but a requester's personal interest in release is entitled to no more weight than that of the public generally. *See Reporters Committee,* 489 U.S. at 771; *Neely*, 208 F.3d at 464; *Hale v. United States Dep't of Justice*, 973 F.2d 894, 901 (10th Cir. 1992), *vacated on other grounds*, 509 U.S. 918 (1993). The public interest to be weighed against privacy interests is the interest of the public in learning about the operation of the *agency that is in possession of the record sought*. A public interest would outweigh the privacy interests of individuals mentioned in law enforcement files only where there is "'compelling evidence *that the agency denying the*

---

[10] A copy of the decision denying that petition in September 2003 appears in the record of *McMillian v. United States Parole Commission,* Civil Action No. 03-1500 [Dkt. # 26]. Defendant has not argued that this decision is relevant to the issues before the Court in the instant case.

*FOIA request* is engaged in illegal activity.'" *Davis v. Department of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *SafeCard Servs.*, 926 F.2d at 1205-06) (emphasis added).  In this case, Plaintiff does not argue that the taped conversation would reveal anything about the operations of the Bureau of Prisons, which is the agency in possession of the tape.  Moreover, in order to overcome the privacy interest of the third parties, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."  *National Archives & Records Admin. v. Favish*, 124 F. Ct. 1570, 1581 (2004).  Plaintiff's assertion that the telephone conversation would provide evidence relating to misconduct of the Parole Commission is not sufficient to overcome the privacy interests of the third parties, particularly in view of the decision in *McMillan v. Mendez, supra,* which rejected his claim that the District of Columbia Board of Parole had held its hearing on June 21.[11]  In sum, Plaintiff has not demonstrated that the public interest in the contents of his telephone conversation with his attorney outweighs the privacy interests of the attorney and third parties mentioned in the call.

Finally, the question arises whether Plaintiff's portions of the telephone conversation can be reasonably segregated from the attorney's portions and thus released.  5 U.S.C. § 552(b);  *see Trans-Pac. Policing Agreement v. United States Customs Serv.,* 177 F.3d 1022, 1028 (D.C. Cir. 1999).  Defendant contends that in this case release of Plaintiff's portions would invade the privacy of third parties because Plaintiff made comments about those persons and statements "detrimental

---

[11] Insofar as Plaintiff may argue that the tape would show misconduct of the now defunct District of Columbia Board of Parole, the FOIA is designed to support the public interest in how agencies of the federal government conduct business.  There is "no FOIA-recognized public interest in discovering wrongdoing by a state agency." *Landano v. United States Dep't of Justice*, 956 F.2d 422, 430 (3d Cir. 1991); *accord, Thomas v. Office of the United States Attorney*, 928 F. Supp. 245, 251 (E.D.N.Y. 1996).

to the reputation of either his defense attorney or other third parties." *Bredenberg Decl.* ¶ 35. Were a new tape to be made containing only Plaintiff's side of the conversations, "all comments [would be] out of context, and thus . . . at least potentially, if not invariably, misleading." *Id.* Bredenberg concluded, therefore, that there were no portions that could be segregated for release, since all parts of the conversations were "'inextricably intertwined with exempt portions.'" *Bredenberg Decl.* ¶ 33. Plaintiff has provided no reason to reject this conclusion.

For the foregoing reasons, Defendant's motion for summary judgment as to the tape of the February 8 telephone call will be granted.. Defendant will be directed to file a further response to the complaint.

An appropriate order accompanies this Memorandum Opinion.

                                              /s/
                                              GLADYS KESSLER
                                              United States District Judge

DATE: July 23, 2004